Magomed Gusein Gasanov, Esq. (CA SBN: 368130)
MGG LAW, PC
468 N Camden Dr., Ste 208
Beverly Hills, CA 90210
gasanov@mgg.law
213-642-9978

*Attorney for Petitioner A.Z.*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| A.Z.,<br><br>Petitioner,<br><br>v.<br><br>ERNESTO SANTACRUZ, JR., Field Office Director, ICE Los Angeles Field Office; DAVID J. VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security; TODD BLANCHE, Attorney General of the United States; and WARDEN of the Adelanto ICE Processing Center, Adelanto, California,<br><br>Respondents. | Case No. 5:26-cv-06104<br><br>**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**<br><br>IMMIGRATION DETENTION — EXPEDITED CONSIDERATION REQUESTED<br><br>A# 231-848-784 |

## TABLE OF CONTENTS

**I. INTRODUCTION ..... 3**
**II. JURISDICTION AND VENUE ..... 4**
**III. PARTIES ..... 5**
**IV. EXHAUSTION IS NOT REQUIRED ..... 6**
**V. STATEMENT OF FACTS ..... 7**
A. Petitioner ..... 7
B. Lawful Admission as an F-1 Student (2021) ..... 7
C. Four Years Known to the Government (2022–2026) ..... 8
D. The People Who Know Her ..... 8
E. The Arrest at Los Angeles International Airport ..... 9
F. Processing and the Notice to Appear ..... 10
G. Bond Proceedings ..... 11
H. Continued Detention ..... 11
**VI. CLAIMS FOR RELIEF ..... 12**
**COUNT I ..... 12**
A. Petitioner Held a Protected Liberty Interest in Remaining at Liberty ..... 12
B. The First Mathews Factor: The Private Interest at Stake ..... 15
C. The Second Mathews Factor: Risk of Erroneous Deprivation ..... 16
D. The Third Mathews Factor: The Government's Interest ..... 18
E. Balance and Remedy ..... 19
F. Alternatively, the September 25 Hearing Was Inadequate ..... 20
**COUNT II ..... 21**
**VII. LIMITED INJUNCTION AGAINST RE-DETENTION ..... 22**
**PRAYER FOR RELIEF ..... 24**
**VERIFICATION ..... 26**

## I. INTRODUCTION

Petitioner Anara Zholdosheva (A# 231-848-784) ("A.Z." or "Petitioner"), a twenty-two-year-old citizen of Kyrgyzstan, came to the United States at seventeen as a student. On September 16, 2021, U.S. Customs and Border Protection inspected her and admitted her at San Francisco International Airport as an F-1 nonimmigrant for the duration of her status. DHS's own records reflect no prior immigration history and no criminal history. (¶¶ 1–5.)

In August 2022 and within a year of her arrival, she filed an affirmative application for asylum and withholding of removal with USCIS. That application remained pending for four years. Throughout those four years the Government knew who she was and that her student status had ended — and it chose not to detain her. (¶¶ 6–8.)

On August 28, 2026, as Petitioner arrived in Los Angeles on a flight from Honolulu, officers of ERO Los Angeles Fugitive Operations acting on a Transportation Security Administration "lead referral" were waiting for her. They arrested her at approximately 4:55 a.m. in what the Form I-213 calls "a targeted enforcement operation." Nothing in the record reflects that she received any notice that her liberty was in question or any opportunity to be heard. (¶¶ 10–15.)

She has been detained at the Adelanto ICE Processing Center ever since. On September 25, 2026, an Immigration Judge denied bond in an order whose only stated reason is "flight risk." The order contains no finding that no bond amount or alternative to detention could reasonably assure her appearance, and no finding that she is dangerous. (¶¶ 20–22.)

Petitioner brings *two* independent and separately sufficient claims. Her seizure and continued confinement without notice or a pre-deprivation hearing violate the procedural component of the Fifth Amendment Due Process Clause. And the denial of any release, on flight-risk grounds alone and without the individualized determination the Constitution requires, violates the Excessive Bail Clause of the

Eighth Amendment. She seeks a writ ordering her immediate release, a limited permanent injunction barring re-detention without notice and a pre-deprivation hearing before a neutral decisionmaker, and an order preserving this Court's jurisdiction by barring her transfer outside this District while the Petition is pending.

In the alternative, and only if the Court declines to order release, order Respondents to provide Petitioner, within seven (7) days, a custody redetermination hearing before a different Immigration Judge at which Respondents bear the burden of justifying detention by clear and convincing evidence; the Immigration Judge determines whether any bond amount or alternative to detention, alone or in combination, would reasonably assure Petitioner's appearance; and, if so, sets conditions no more restrictive than necessary, considering Petitioner's ability to pay and the availability of alternatives to detention; and order that Petitioner be released if Respondents do not provide such a hearing within that time.

## II. JURISDICTION AND VENUE

This Court has jurisdiction under 28 U.S.C. §§ 2241 and 1331 and Article I, § 9, cl. 2 of the United States Constitution. Petitioner is in Respondents' custody under color of federal authority in violation of the Constitution of the United States.

Section 1226(e) poses no bar. It does not strip jurisdiction over constitutional claims or questions of law. *Martinez v. Clark*, 124 F.4th 775, 781–82 (9th Cir. 2024); *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011). Petitioner does not ask this Court to reweigh any discretionary custody judgment. She asks it to decide whether she could be seized without prior notice or a hearing, and whether release could be denied altogether without the individualized determination the Eighth Amendment requires. Both are constitutional questions.

Sections 1252(a)(5), 1252(b)(9), and 1252(g) pose no bar. Those provisions reach removal orders and the three specific actions enumerated in § 1252(g); they do not reach claims challenging the legality of detention. *Jennings v. Rodriguez*, 583

U.S. 281, 293–94 (2018); *Gonzalez v. U.S. Immigration & Customs Enforcement*, 975 F.3d 788, 810–11 (9th Cir. 2020); *Flores-Miramontes v. INS*, 212 F.3d 1133 (9th Cir. 2000); *Balbabyan v. Blanche*, No. 5:26-cv-03879-SP, Dkt. 14 at 3–4 (C.D. Cal. Sept. 11, 2026); see *Jam v. Mullin*, No. 5:26-cv-02986, 2026 U.S. Dist. LEXIS 132441 (C.D. Cal. June 12, 2026).

Venue is proper. Petitioner is confined at the Adelanto ICE Processing Center in San Bernardino County, within this District and its Eastern Division, where her immediate custodian is located. (¶ 23.) 28 U.S.C. § 1391(e); *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004).

Under 28 U.S.C. § 2243, the Court shall forthwith award the writ or order Respondents to show cause why it should not be granted, and the burden of showing cause rests on Respondents. Petitioner requests that any such order direct Respondents to identify the statutory provision they contend authorizes her detention and to lodge the Form I-200 warrant of arrest together with any record reflecting the time of its issuance, any Form I-286 custody determination, the Notice to Appear, the complete Form I-213 file, the TSA lead referral on which the arrest was based, and the record of the September 25, 2026 custody redetermination hearing.

## III. PARTIES

Petitioner Anara Zholdosheva (A# 231-848-784) is a native and citizen of Kyrgyzstan, born in 2003, detained at the Adelanto ICE Processing Center, 10400 Rancho Road, Adelanto, California 92301. (¶¶ 1, 23.)

Respondent Warden of the Adelanto ICE Processing Center is Petitioner's immediate physical custodian, named in his or her official capacity. Respondents Ernesto Santacruz, Jr. (Field Office Director, Los Angeles Field Office, ICE), David J. Venturella (Acting Director, ICE), Markwayne Mullin (Secretary, U.S. Department of Homeland Security), and Todd Blanche (Attorney General of the

United States) are named in their official capacities to the extent necessary to effectuate Petitioner's release and the prospective relief requested.

Because Petitioner is detained and unable to execute a declaration in the ordinary course, this Petition is verified by undersigned counsel on her behalf pursuant to 28 U.S.C. § 2242.

## IV. EXHAUSTION IS NOT REQUIRED

Exhaustion is not statutorily mandated under § 2241, and prudential exhaustion does not apply here. Exhaustion is excused where "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Petitioner's claims are constitutional: they challenge the process by which she was seized and the constitutional adequacy of the determination that denied her any release. The Board of Immigration Appeals "has no jurisdiction to decide questions of the constitutionality of the immigration laws." *Liu v. Waters*, 55 F.3d 421, 426 (9th Cir. 1995). An appeal of the September 25, 2026 bond order could at most produce a further post-deprivation custody determination; it cannot supply the pre-deprivation process that the Constitution required, and it would take time Petitioner spends in custody. Agency expertise would add nothing to the record, and each day of delay compounds an ongoing deprivation of liberty. *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007); *Castillo v. Barr*, 449 F. Supp. 3d 915, 920 (C.D. Cal. 2020). Courts have ordered release in this posture both where a bond appeal was pending and where the bond denial was never appealed. *Galvez-Mondragon v. Warden, Cal. City Corr. Ctr.*, 2026 U.S. Dist. LEXIS 151996, at *2–3 (E.D. Cal. July 9, 2026); *Xihui Huang v. Blanche*, 2026 U.S. Dist. LEXIS 178076, at *5, *23 (W.D. Wash. July 15, 2026).

## V. STATEMENT OF FACTS

### A. Petitioner

1. Petitioner Anara Zholdosheva is a twenty-two-year-old native and citizen of Kyrgyzstan, born in 2003, A231-848-784. (Ex. A at 1; Ex. B.)

2. DHS's own Form I-213 records her immigration record as "NEGATIVE," leaves the "Criminal Record" field blank, and reports that NCIC was checked on the date of her arrest with a negative result. Before August 2026 she had never been placed in removal proceedings. (Ex. A at 1–2; Ex. D.)

### B. Lawful Admission as an F-1 Student (2021)

3. On September 16, 2021, at the age of seventeen, Petitioner was inspected and admitted by U.S. Customs and Border Protection at San Francisco International Airport as an F-1 nonimmigrant student. Her Form I-94 records the class of admission as "F1" and the "Admit Until Date" as "D/S" — duration of status. (Ex. A at 3; Ex. B.)

4. The F-1 classification, INA § 101(a)(15)(F)(i), 8 U.S.C. § 1101(a)(15)(F)(i), is available only to a bona fide student accepted by a school certified by DHS's Student and Exchange Visitor Program ("SEVP"), whose enrollment is recorded in the Student and Exchange Visitor Information System ("SEVIS"). The I-213 records that Petitioner was issued a SEVIS number. (Ex. A at 3.) Her presence in this country thus began within a federal program administered by ICE and with an inspection and admission by CBP.

5. Because she was admitted for duration of status rather than to a fixed date, Petitioner's I-94 bears no expiration date. The Form I-213 nonetheless asserts that she "was not permitted to remain in the United States beyond June 24, 2024," without identifying the source of that date. (Ex. A at 2; Ex. B.)

**C. Four Years Known to the Government (2022–2026)**

6. On March 31, 2022, a Designated School Official terminated Petitioner's F-1 student status for a drop below a full course load. (Ex. A at 3.) SEVIS is administered by SEVP, a component of ICE. From that date forward, the agency that now detains her held a record that her student status had ended.

7. On August 4, 2022 — less than eleven months after her arrival, and four months after the termination of her student status — Petitioner filed a Form I-589 Application for Asylum and for Withholding of Removal with U.S. Citizenship and Immigration Services. (Ex. A at 3.)

8. In the four years and five months between the termination of her student status and her arrest, the record reflects no enforcement action against Petitioner of any kind: no charging document, no warrant, no arrest, and no request that she depart. DHS's own Form I-213, prepared on the day of her arrest, acknowledges that she "currently has pending applications before USCIS." (Ex. A at 1–3.)

**D. The People Who Know Her**

9. Petitioner has spent her entire adult life in the United States. Four people who know her submitted signed letters on her behalf in her bond proceedings, each with identification:

a. Nora Ruslan, a United States citizen residing in Glendale, California, has known Petitioner for approximately five years. They met in Seattle, Washington; both later moved to Los Angeles, and for a period they lived together. Ms. Ruslan describes Petitioner as "kind, honest, respectful, responsible, and caring," states that she does not believe Petitioner poses any danger to the community, and believes Petitioner "will comply with the conditions of her release and attend all required immigration and court hearings." (Ex. F at 1–2.)

b. Indira Zhambalina, a lawful permanent resident residing in Kirkland, Washington, has known Petitioner for approximately three years. They met in Newcastle, Washington and in 2023 moved to Los Angeles together, where they lived together. She writes that Petitioner is "a responsible and trustworthy person who will comply with the conditions of her release and attend all required immigration and court hearings." (Ex. F at 3–4.)

c. Laura Bakhytzhanova, of Los Angeles, a close friend of three years, describes Petitioner as "kind, respectful, responsible, hardworking, and caring" and states that she does not believe Petitioner poses any danger to the community. (Ex. F at 5–6.)

d. Josefina Rodriguez, who has known Petitioner for four years as a friend of her daughter, writes that Petitioner has "strong ties to the community" and that she believes Petitioner "will comply with all court requirements and attend all immigration hearings if they are released." (Ex. F at 7–8.)

**E. The Arrest at Los Angeles International Airport**

10. According to the Form I-213, Petitioner "came to the attention of ICE Enforcement and Removal Operations (ERO) Los Angeles pursuant to a Transportation Security Administration (TSA) lead referral." (Ex. A at 2.)

11. On August 28, 2026, officers of ERO Los Angeles Fugitive Operations "arrived at Los Angeles International Airport (LAX), 1 World Way, Los Angeles, CA 90045" at approximately 4:00 a.m., where Petitioner "was scheduled to arrive from Honolulu, HI via American Airlines flight AA144." The I-213 describes the arrest as the product of "a targeted enforcement operation." (Ex. A at 2.) Honolulu is in the United States; the flight was domestic.

12. When Petitioner arrived, officers approached her, identified themselves, and conducted a field interview. She provided her Kyrgyz passport, which matched her name and date of birth. Officers "advised that a warrant had been issued for her

arrest," and at approximately 4:55 a.m. arrested her "without incident." She was transported to the ICE Los Angeles Field Office for processing. (Ex. A at 1–3.)

13. Nothing in the I-213 reflects that Petitioner received any notice, before she was approached at the airport, that her liberty was in question, or any opportunity to be heard by anyone before she was taken into custody. The I-213 records that she was arrested "without incident." (Ex. A at 2–3.)

14. Although the arresting unit was Fugitive Operations, Petitioner had no prior removal order and no prior immigration proceedings. The I-213's "Immigration Record" field reads "NEGATIVE." (Ex. A at 1.)

**F. Processing and the Notice to Appear**

15. ERO served Petitioner with a Notice to Appear charging two grounds of removability, both civil and both premised on her lawful admission: INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), as a nonimmigrant who remained longer than permitted, and INA § 237(a)(1)(C)(i), 8 U.S.C. § 1227(a)(1)(C)(i), for failure to maintain student status. (Ex. A at 2–4.) No criminal ground, fugitive ground, or security ground is alleged. The I-213 records that she "will remain in ERO custody pending immigration proceedings." (Ex. A at 4.)

16. When asked about her parents' places of birth and citizenship and about her marital status, Petitioner declined to answer without an attorney present. (Ex. A at 3.) The I-213 records her address as "FAILED TO PROVIDE ADDRESS." (Ex. A at 1.)

17. Petitioner was offered "Incentivized Voluntary Departure." She declined it. (Ex. A at 4.) She chose instead to remain and contest removal before an Immigration Judge.

18. Removal proceedings were docketed at the Adelanto Immigration Court on September 2, 2026, before Immigration Judge Jonathan Masaji Brent. Her next master calendar hearing is set for October 30, 2026 at 8:00 a.m., in person. (Ex. D.)

19. Because Petitioner was admitted and is charged as deportable under INA § 237, she is detained under 8 U.S.C. § 1226(a), and the Immigration Court exercised custody redetermination jurisdiction under 8 C.F.R. § 1236. (Ex. A at 3–4; Ex. C at 1.)

**G. Bond Proceedings**

20. Petitioner, through prior counsel, requested a custody redetermination and submitted her Form I-94 and the four letters of support described above. (Ex. B; Ex. F.)

21. On September 25, 2026, Immigration Judge Brent denied the request. The order states, as its only reason: "Denied, because flight risk." DHS waived appeal; Petitioner reserved appeal, which is due October 26, 2026. (Ex. C at 1–2.) Under the governing regulation and Board precedent, the burden in a § 1226(a) custody redetermination is placed on the noncitizen. 8 C.F.R. § 1236.1(c)(8); *Matter of Adeniji*, 22 I. & N. Dec. 1102 (B.I.A. 1999).

22. The order contains no finding that no amount of bond, and no alternative to detention, alone or in combination, could reasonably assure Petitioner's appearance. It reflects no consideration of any bond amount or any alternative condition. It contains no finding of dangerousness. (Ex. C at 1.)

**H. Continued Detention**

23. Petitioner has been detained continuously since August 28, 2026, and is now held at the Adelanto ICE Processing Center, 10400 Rancho Road, Adelanto, California 92301. (Ex. A at 1–4; Ex. E.)

## VI. CLAIMS FOR RELIEF

### COUNT I

### Violation of the Fifth Amendment Right to Procedural Due Process — Seizure After Four Years of Known Presence and Confinement Without Notice or a Pre-Deprivation Hearing

24. Petitioner realleges and incorporates each preceding paragraph.

25. The Due Process Clause protects noncitizens "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." *Id.* at 690. Due process generally "requires some kind of a hearing before the State deprives a person of liberty." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990); *Hernandez*, 872 F.3d at 981.

26. The analysis proceeds in two steps: whether a protected liberty interest exists, and what process was required before its deprivation. *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989). The second step is governed by *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022); *Balbabyan*, Dkt. 14 at 4–5.

#### A. Petitioner Held a Protected Liberty Interest in Remaining at Liberty

27. "Freedom from physical restraint [is] a fundamental right." *Foucha v. Louisiana*, 504 U.S. 71, 86 (1992). "Even individuals . . . over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

28. Petitioner's presence in this country began with an affirmative act of the United States: CBP inspected her and admitted her as an F-1 student, within a program administered by ICE. (¶¶ 3–4.) When her student status ended, ICE's own SEVP recorded it. (¶ 6.) Four months later she filed an asylum application with

USCIS, and that application remained pending for four years. (¶¶ 7–8.) Her liberty was not self-created. The Government admitted her, learned that her status had ended, received her application for protection, and for four years left her at liberty.

29. Throughout those four years, the Government knew of her presence and of the very status violation it now invokes, and the record reflects no enforcement action of any kind. (¶ 8.) The people who know her describe a young woman who lived in Washington and then Los Angeles, shared homes with friends, and built lasting relationships. (¶ 9.)

30. Where the government knows of a noncitizen's presence, affirmatively approves it, and then declines for years to detain her, it may not extinguish her liberty without pre-deprivation process. "[A]lthough the government did not detain and then release her, it made a decision not to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual initially detained." *Kharitonova v. Albarran*, 2026 U.S. Dist. LEXIS 39213, at *5–6 (N.D. Cal. Feb. 25, 2026). The contrary contention — that one never previously detained holds no such interest — is "specious" and "unsupported by any legal authority." *Id.*

31. *Kalkan v. Chestnut*, 2026 U.S. Dist. LEXIS 59347, at *3 (E.D. Cal. Mar. 20, 2026), describes Petitioner exactly: a noncitizen holds a protected liberty interest where immigration officials "were aware of his presence, initially approved of that presence, and did not promptly detain him when that status expired." *Kalkan* grounded that rule in *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972): the decision not to detain, like a grant of parole, is "based on an evaluation," allows "a relatively normal life," and induces reliance on "at least an implicit promise" that liberty will be revoked only for cause.

32. This Court has applied these principles to a petitioner in Petitioner's position. In *Balbabyan v. Blanche*, the petitioner entered on a visitor visa, filed for asylum, and was never detained until ICE arrested him in 2026. The Court held that because "ICE was aware of his presence given his application . . . but chose not to

detain him," and he had "established a life for himself in the United States," he had "acquired a protected liberty interest in his release from immigration custody." Dkt. 14 at 5 (citing *Xianming H. v. Warden*, 2026 WL 1283415, 2026 U.S. Dist. LEXIS 103412, at *3 (E.D. Cal. May 11, 2026) (overstay with pending asylum application "has a clear liberty interest"), and *Saadi v. Larose*, 2026 WL 892831, at *4 (S.D. Cal. Mar. 30, 2026) (tourist-visa entrant with pending asylum application "has developed an interest in remaining during his time here")). Petitioner's case is stronger. Mr. Balbabyan had been in the country for about one year; Petitioner had been here for nearly five, more than four of them after ICE's own records showed the very status violation on which it now relies. (¶¶ 3, 6–8.)

33. The interest does not depend on any particular status or filing. In *Vazquez v. Mullin*, 2026 U.S. Dist. LEXIS 147354, at *9 (W.D. Wash. July 2, 2026), a J-1 overstay who had filed nothing held a protected liberty interest arising solely from the government's years of acquiescence and his ties here. In *Xihui Huang*, 2026 U.S. Dist. LEXIS 178076, at *23, a B-2 overstay charged only under INA § 237(a)(1)(B) — one of the two grounds charged here — was found to hold a protected liberty interest and ordered released. Accord *Yu v. Giles*, 2026 U.S. Dist. LEXIS 189002, at *12 (C.D. Cal. Aug. 21, 2026) (protected liberty interest where "for more than five years the Government knew exactly who and where Petitioner was . . . and chose not to detain him"); *Jam*, 2026 U.S. Dist. LEXIS 132441, at *5–7; *Grigoryan v. Lyons*, 2026 U.S. Dist. LEXIS 159668, at *3–4 (C.D. Cal. June 16, 2026); *Martinez v. Acting Warden of the Adelanto Det. Ctr.*, 2026 WL 2262269, at *5 (C.D. Cal. Aug. 5, 2026); *Gagik T. v. Chestnut*, 2026 WL 1837413, at *3 (E.D. Cal. June 25, 2026) (a noncitizen "who has lived at liberty for years while his immigration case proceeds — pursuant to the Government's affirmative decision not to detain him — holds a protected liberty interest in remaining free from custody, and may not be detained without pre-deprivation process").

34. The circumstances of the seizure confirm the interest. Respondents did not find Petitioner through any effort to evade them. They found her through a TSA referral while she traveled on a domestic flight, presenting her own passport when approached. They knew her flight number and arrival time and were waiting for her before dawn. (¶¶ 10–12.) A young woman arriving in Los Angeles on a domestic flight, traveling under her true identity, is the antithesis of one whose appearance cannot be assured.

**B. The First Mathews Factor: The Private Interest at Stake**

35. The private interest is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *Rodriguez Diaz*, 53 F.4th at 1207. It is at its height for a noncitizen whom the government has permitted to build "an out-of-custody life in the United States." *Pinchi*, 792 F. Supp. 3d at 1033; *Balbabyan*, Dkt. 14 at 6 (petitioner "allowed to remain free pending his asylum application" had a "high" interest in remaining out of custody).

36. Petitioner arrived at seventeen. She has lived the entirety of her adult life here, in Washington and Los Angeles, building the friendships reflected in the letters of a United States citizen, a lawful permanent resident, and two others who have known her for years. (¶¶ 3, 9.) Detention has severed her from that life.

37. Detention also strikes at the relief at issue in her case. Petitioner filed for asylum within a year of her arrival, and DHS acknowledges that her application was pending when it arrested her. (¶¶ 7–8.) A pending application for protection is a powerful motive to appear. *Xihui Huang*, 2026 U.S. Dist. LEXIS 178076, at *20. Confinement does not advance its adjudication; it forces a twenty-two-year-old to pursue it from a detention facility, on a detained docket. (¶¶ 18, 23.)

38. This factor weighs heavily for Petitioner.

**C. The Second Mathews Factor: Risk of Erroneous Deprivation**

39. Petitioner received no notice that her liberty was in question and no opportunity to be heard before she was seized. (¶¶ 11–13.) "The risk of an erroneous deprivation of liberty is high where, as here, petitioner has not received any bond or custody redetermination hearing" before detention. *Balbabyan*, Dkt. 14 at 6 (quoting *R.D.T.M. v. Wofford*, 2025 WL 2686866, at *6 (E.D. Cal. Sept. 18, 2025)); *Kharitonova*, 2026 U.S. Dist. LEXIS 39213, at *7; *Jam*, 2026 U.S. Dist. LEXIS 132441, at *8.

40. The bond hearing she later obtained does not cure the violation. "[C]ourts in this District have concluded that a post-deprivation bond hearing ordinarily 'is not an adequate substitute' for a pre-deprivation hearing." *Herman v. DHS*, 2026 U.S. Dist. LEXIS 133109, at *5 (C.D. Cal. June 12, 2026) (collecting cases), quoted in *Yu*, 2026 U.S. Dist. LEXIS 189002, at *13. Such a hearing "cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty." *E.A.T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025); accord *Vazquez*, 2026 U.S. Dist. LEXIS 147354, at *6; *Xihui Huang*, 2026 U.S. Dist. LEXIS 178076, at *12; *Galvez-Mondragon*, 2026 U.S. Dist. LEXIS 151996, at *3.

41. Courts have ordered release in precisely Petitioner's posture — a post-arrest bond request denied on flight-risk grounds. In *Yu*, the immigration judge denied bond because the petitioner "failed to meet his burden to establish that he is not such a significant risk of flight that no amount of bond or alternatives to detention would be sufficient to mitigate it," 2026 U.S. Dist. LEXIS 189002, at *5, and the Court nonetheless ordered release. *Id.* at *12–13. *Galvez-Mondragon* ordered release with a bond appeal pending. 2026 U.S. Dist. LEXIS 151996, at *2–3. *Xihui Huang* ordered release after a bond denial that was never appealed. 2026 U.S. Dist. LEXIS 178076, at *5, *23.

42. The hearing Petitioner received illustrates why after-the-fact process is no substitute. The burden rested on her to prove a negative. (¶ 21.) No finding of dangerousness was made. And the order offers two words of explanation — "flight risk" — without identifying any fact on which that conclusion rests or addressing whether any bond or condition would suffice. (¶¶ 21–22.) The I-213 supplies no such fact. It records that Petitioner declined to answer certain questions without an attorney and notes that she "failed to provide" an address. (¶ 16.) Declining to answer questions without counsel during a custodial interview is not evidence of flight. And the domestic flight that led to her arrest is evidence of the opposite of flight: she was arriving in Los Angeles, not leaving the country. (¶¶ 11–12.) A process in which unexplained conclusions stand in for findings, and the detainee must disprove the Government's inference, is the mechanism of erroneous deprivation that *Mathews* exists to prevent.

43. The value of the omitted safeguard is correspondingly high. *Gagik T.*, 2026 WL 1837413, at *4; *Balbabyan*, Dkt. 14 at 7 ("[g]iven the absence of any procedural safeguards to determine if [petitioner's] detention was justified, the probable value of additional procedural safeguards, i.e., a bond hearing, is high") (quoting *R.D.T.M.*, 2025 WL 2686866, at *6). At a hearing at which the Government bore the burden, Petitioner would have shown a lawful admission; a timely asylum application pending for four years; no immigration or criminal history; four people who vouch for her character and her compliance; and her own conduct when offered the chance to leave — she declined voluntary departure and chose to contest her case before an Immigration Judge. (¶¶ 2, 3, 7–9, 17.) No neutral decisionmaker weighed any of this before Petitioner lost her liberty.

44. This factor weighs heavily for Petitioner.

**D. The Third Mathews Factor: The Government's Interest**

45. Respondents' interest in detaining Petitioner without notice and a hearing is minimal, and no fiscal or administrative burden stood in the way. "In immigration court, custody hearings are routine and impose a minimal cost." *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025) (cleaned up). Notice and a custody hearing "are the very process contemplated under 8 U.S.C. § 1226(a)." *Xianming H.*, 2026 U.S. Dist. LEXIS 103412, at *11; see *Meneses v. Santacruz*, 811 F. Supp. 3d 1158, 1164 (C.D. Cal. 2025) ("there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing").

46. Respondents' own conduct forecloses any claim of urgency. ICE's records showed the termination of Petitioner's student status in March 2022, and the record reflects no action for more than four years. (¶¶ 6, 8.) When ICE acted, it acted on a TSA referral that told it which flight she would be on and when it would land, and it planned an operation around that arrival. (¶¶ 10–11.) An agency with the time and information to plan such an operation had the time to give notice and provide a hearing first. It made a custody decision the same day — that she "will remain in ERO custody" (¶ 15) — and simply made it after the seizure instead of before. "Respondents, in effect, already made [a custody] determination with respect to petitioner when they decided not to detain her in the first place." *Jam*, 2026 U.S. Dist. LEXIS 132441, at *8; *Balbabyan*, Dkt. 14 at 6.

47. Civil immigration detention may serve only two purposes: preventing flight and protecting the community. *Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990–91. Respondents have never asserted that Petitioner is dangerous, and the Immigration Judge made no such finding. (¶ 22.) Nothing in the record reflects any change in her circumstances between March 2022, when ICE's records showed her student status had ended, and August 2026, when Respondents detained her.

Detention the Government did not think necessary for four years cannot have become necessary on August 28, 2026 without so much as a hearing to say why.

**E. Balance and Remedy**

48. All three *Mathews* factors favor Petitioner. She was entitled to notice and an opportunity to be heard before Respondents took her liberty. She received neither. Her detention violates the Fifth Amendment.

49. *Rodriguez Diaz* does not hold otherwise. It addressed whether the § 1226(a) bond framework afforded adequate process for the continued detention of a noncitizen who had received a bond hearing and administrative review; it did not address whether the Government may seize, without any prior notice or hearing, a person it had knowingly left at liberty for years. 53 F.4th at 1206–13. A small number of district court decisions have held that a noncitizen never previously detained holds a lesser interest, or that a prompt post-deprivation hearing suffices. See *Jemna v. Warden of Otay Mesa Det. Ctr.*, 2026 WL 788172, at *5 (S.D. Cal. Mar. 20, 2026); *Zakharenkova v. Mullin*, 2026 U.S. Dist. LEXIS 124195, at *5 (C.D. Cal. May 19, 2026). They are against the clear weight of authority in this District, and *Balbabyan* considered and declined to follow both. Dkt. 14 at 5, 8. Nor do they reach this case on their own terms: whatever the adequacy of a prompt post-deprivation hearing in the abstract, the one Petitioner received placed the burden on her, made no danger finding, and rested on a two-word conclusion unsupported by any identified fact. (¶¶ 21–22.)

50. The remedy is immediate release restoring the liberty Petitioner held before August 28, 2026. "[T]he purpose of habeas remedies is to put the defendant back in the position he would have been in if the constitutional violation never occurred." *Lujan v. Garcia*, 734 F.3d 917, 935 (9th Cir. 2013) (cleaned up); *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). That principle "has particular force where, as here, the protections at issue are intended to prevent an unlawful detention in the

first place." *Yu*, 2026 U.S. Dist. LEXIS 189002, at *13. "Because petitioner's detention was unlawful, the proper remedy is release from custody." *Balbabyan*, Dkt. 14 at 7. Courts in this District and this Circuit have ordered exactly this relief on comparable records. *Balbabyan*, Dkt. 14 at 9; *Yu*, at *13–14; *Jam*, at *10–12; *Grigoryan*, at *5; *Xingang Zhao v. Janecka*, 2026 U.S. Dist. LEXIS 102817 (C.D. Cal. May 7, 2026); *Xihui Huang*, at *23; *Vazquez*, at *9; *Kalkan*, at *3; *Kharitonova*, at *4; *Galvez-Mondragon*, at *4–5.

51. Release should be accompanied by the limited injunction against re-detention described in Section VII and by an order that Respondents return Petitioner's property, including her passport, upon release.

**F. Alternatively, the September 25 Hearing Was Inadequate**

52. If the Court declines to order immediate release, Petitioner alleges in the alternative that the September 25, 2026 bond hearing did not satisfy due process and that any further custody hearing must. Due process requires that the government bear the burden of proving by clear and convincing evidence that the noncitizen is a flight risk or a danger and that no condition or combination of conditions could reasonably assure her appearance, *Singh v. Holder*, 638 F.3d 1196, 1203–04 (9th Cir. 2011); that the immigration judge consider ability to pay and alternatives to detention, *Hernandez*, 872 F.3d at 994; and that the judge make an individualized determination and articulate a meaningful rationale, *Martinez v. Clark*, 124 F.4th at 783–85.

53. The September 25 hearing met none of these requirements. The burden rested on Petitioner. No finding of dangerousness was made. The only rationale is the phrase "flight risk," and the order reflects no consideration of any bond amount or alternative to detention. (¶¶ 21–22.) *Xihui Huang* held that an immigration judge who fails to apply the proper standards to a bond determination, and whose order does not reflect consideration of the record or of alternative conditions, both abuses

his discretion and violates the Due Process Clause, and ordered release on that independent ground. 2026 U.S. Dist. LEXIS 178076, at *19–22. At minimum, Petitioner is entitled to a custody hearing within seven days before a neutral decisionmaker at which Respondents bear the burden of justifying her detention by clear and convincing evidence and the decisionmaker considers alternatives to detention.

**COUNT II**

**Violation of the Excessive Bail Clause, U.S. Const. amend. VIII**

54. Petitioner realleges and incorporates the preceding paragraphs.

55. The Eighth Amendment provides that "[e]xcessive bail shall not be required." U.S. Const. amend. VIII. The Clause forbids the government from imposing release conditions that are excessive in light of the interest they are meant to serve. *United States v. Salerno*, 481 U.S. 739, 754 (1987).

56. Once Congress has made a noncitizen eligible for release on bond, as 8 U.S.C. § 1226(a) does, the Excessive Bail Clause applies: bail may not be excessive "in those cases where it is proper to grant bail." *Carlson v. Landon*, 342 U.S. 524, 545 (1952). The Clause limits the government's "conditions of release or detention," which may not be excessive in light of the interest they serve. *Salerno*, 481 U.S. at 754.

57. When the government's only interest is assuring appearance, "bail must be set by a court at a sum designed to ensure that goal, and no more." *Id.* (citing *Stack v. Boyle*, 342 U.S. 1, 5 (1951)). *Stack* requires an individualized determination tied to the person before the court.

58. Flight risk was the only basis for the Immigration Judge's denial. Yet the Immigration Judge never found that no bond amount or alternative condition could reasonably assure Petitioner's appearance, and never considered any. (¶¶ 21–22.) Denying all release without that finding imposes detention beyond what the

government's sole asserted interest can justify, in violation of the Eighth Amendment.

59. Petitioner is therefore "in custody in violation of the Constitution," 28 U.S.C. § 2241(c)(3), and is entitled to relief. Because the violation lies in the Immigration Judge's failure to make the individualized determination the Excessive Bail Clause requires, the appropriate remedy is either (a) Petitioner's release on conditions this Court finds no greater than necessary to reasonably assure her appearance, or, in the alternative, (b) a new custody redetermination hearing before a different Immigration Judge within seven (7) days. At that hearing, the Immigration Judge must determine whether any bond amount or alternative to detention, alone or in combination, would reasonably assure Petitioner's appearance. If so, the Immigration Judge must set conditions no more restrictive than necessary, considering Petitioner's ability to pay and the availability of alternatives to detention, see *Hernandez*, 872 F.3d at 990–91. If Respondents do not provide such a hearing within that time, Petitioner should be released.

## VII. LIMITED INJUNCTION AGAINST RE-DETENTION

60. Injunctive relief is a proper habeas remedy. *Perera v. Jennings*, 598 F. Supp. 3d 736, 742 (N.D. Cal. 2022). "In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief," *Lujan*, 734 F.3d at 933, and are authorized under 28 U.S.C. § 2243 "to dispose of habeas corpus matters as law and justice require," *id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)).

61. A permanent injunction may issue where the movant shows "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Where

the opposing party is the government, the third and fourth factors merge. *Garcia v. County of Alameda*, 150 F.4th 1224, 1234 (9th Cir. 2025); see *Nken v. Holder*, 556 U.S. 418, 435 (2009).

62. Petitioner makes that showing. She has suffered an irreparable injury by being detained in violation of due process, and would suffer it again if Respondents repeat that conduct; unconstitutional deprivation of physical liberty is irreparable harm. *Hernandez*, 872 F.3d at 994–95. Damages would not cure it. And the equities favor a limited injunction: requiring basic process before any re-detention costs Respondents only a short delay if they can justify detention to a neutral decisionmaker, while its absence would force Petitioner to suffer detention and file a second habeas petition to undo it. The public has a strong interest in upholding procedural protections against unlawful detention. *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005).

63. This case presents a concrete factual basis for prospective relief, not a generalized fear of re-arrest. Respondents left Petitioner at liberty for more than four years after ICE's own records showed that her student status had ended, then seized her without notice on the strength of a TSA referral. (¶¶ 6–8, 10–12.) Nothing about that mechanism ends with her release: any future domestic flight could again bring her to Respondents' attention through the same channel, and she remains obligated to appear in person before the Adelanto Immigration Court. (¶ 18.) Absent an injunction, nothing in this record suggests Respondents would treat a release order as a constraint on re-arresting her at the next airport or the next hearing on the same basis.

64. The injunction sought is narrow and targeted at the harms presented. It would require, before any re-detention under 8 U.S.C. § 1226: (i) at least seven days' advance written notice; and (ii) a pre-deprivation bond hearing before an immigration judge at which Respondents bear the burden of proving by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and

that no condition or combination of conditions could reasonably assure her future appearance or the community's safety, with the judge conducting an individualized assessment of her suitability for bond under that standard. Courts in this District have entered precisely this relief. *Balbabyan*, Dkt. 14 at 9 (enjoining re-detention "unless [respondents] demonstrate, by clear and convincing evidence at a pre-deprivation hearing before a neutral decisionmaker, that petitioner presents a flight risk or a danger to the community"); *Yu*, 2026 U.S. Dist. LEXIS 189002, at *13–14; *Grigoryan*, 2026 U.S. Dist. LEXIS 159668; *Jam*, 2026 U.S. Dist. LEXIS 132441; see also *Huy Cu v. Marin*, 2026 WL 1427009, at *1–3 (C.D. Cal. May 21, 2026) (rejecting objections that prospective injunctive relief is inappropriate in immigration habeas); *Araujo-Contreras v. Janecka*, 2026 WL 1625368, at *1–4 (C.D. Cal. June 3, 2026) (same); *Mourey v. Bowen*, 2026 WL 467567, at *6 (C.D. Cal. Jan. 31, 2026); *Carballo v. Andrews*, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025); *Ixchop Perez v. McAleenan*, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020).

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

(1) Assume jurisdiction over this matter;

(2) Issue an order directing Respondents to show cause, within three days, why the writ should not be granted, and requiring Respondents to certify the specific statutory provision authorizing Petitioner's detention and to lodge the Form I-200 warrant of arrest together with any record reflecting the time of its issuance, any Form I-286 custody determination, the Notice to Appear, the complete Form I-213 file, the TSA lead referral on which the arrest was based, and the record of the September 25, 2026 custody redetermination hearing, 28 U.S.C. § 2243;

(3) Order that Respondents shall not transfer Petitioner outside the Central District of California while this Petition is pending, to preserve the Court's jurisdiction and Petitioner's access to counsel;

(4) Issue a writ of habeas corpus and grant the Petition on Count I and Count II, each of which independently warrants relief;

(5) Order Respondents to release Petitioner immediately, subject to no conditions beyond those that existed before her August 28, 2026 arrest or, as to Count II, on conditions this Court finds no greater than necessary to reasonably assure her appearance;

(6) Enter a limited permanent injunction barring Respondents from re-detaining Petitioner under 8 U.S.C. § 1226 without providing at least seven days' advance written notice and a pre-deprivation bond hearing before an immigration judge at which Respondents bear the burden of proving by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure her future appearance or the safety of the community, and requiring that the immigration judge conduct an individualized assessment of Petitioner's suitability for bond under that standard;

(7) Order Respondents to return to Petitioner, upon release, all property and documents confiscated at or after her arrest, including her passport;

(8) In the alternative, and only if the Court declines to order release, order Respondents to provide Petitioner, within seven (7) days, a custody redetermination hearing before a different Immigration Judge at which Respondents bear the burden of justifying detention by clear and convincing evidence; the Immigration Judge determines whether any bond amount or alternative to detention, alone or in combination, would reasonably assure Petitioner's appearance; and, if so, sets conditions no more restrictive than necessary, considering Petitioner's ability to pay and the availability of

alternatives to detention; and order that Petitioner be released if Respondents do not provide such a hearing within that time;

(9) Award Petitioner costs and reasonable attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412; and

(10) Grant such other and further relief as the Court deems just and proper.

## VERIFICATION

Pursuant to 28 U.S.C. § 2242, this Petition is signed and verified by undersigned counsel on Petitioner's behalf, Petitioner being detained and unable to execute a verification in the ordinary course. Counsel's knowledge of the matters alleged derives from his review of the documents submitted as exhibits to this Petition — DHS's Form I-213, Petitioner's Form I-94, the September 25, 2026 order of the Immigration Judge, the Immigration Court's automated case information, ICE's online detainee locator, and the letters of support filed in Petitioner's bond proceedings — and from his communications with Petitioner. On that basis, the factual allegations of this Petition are true and correct to the best of counsel's knowledge, information, and belief.

Dated: October 15, 2026

Respectfully submitted,

/s/ Magomed Gusein Gasanov

Magomed Gusein Gasanov, Esq. (CA SBN: 368130)
MGG LAW, PC
468 N Camden Dr., Ste 208
Beverly Hills, CA 90210
gasanov@mgg.law
213-642-9978

Attorney for Petitioner A.Z.